## CLAUDE MOORE v. STATE.

No. A-3940.    Opinion Filed March 10, 1923.

Rehearing Denied Oct. 27, 1923.
(218 Pac. 1102.)

(Syllabus.)

1.    **Trial—Sufficiency of Instructions when Considered Together.**
The instructions must be considered as a whole; no single instruction should be considered to the exclusion of the other instructions given. If, when considered together, the instructions correctly cover the law of the case and are not misleading, confusing, and contradictory, errors or omissions in separate instructions will not constitute reversible error.

2. **Homicide—Aggressor's Right of Self-Defense After Abandoning Conflict in Good Faith.** The right of one to defend another is coextensive with the right of the other to defend himself. It is not held that the right of self-defense can never arise at any stage of a difficulty when one is defending himself against dangers of any kind which he may have unlawfully provoked. In all cases where one has withdrawn from an affray or difficulty as far as he possibly can and fairly indicates his desire for peace and is thereafter pursued by the other party who renews the difficulty, his right of self-defense, although once lost, is revived and may be successfully pleaded by him, and thereafter his actions will be justified even to the extent of taking human life if necessary. This is also the law as to a relative who enters such conflict after such withdrawal either with or without knowledge of such withdrawal.

3. **Same—Abandoning Conflict to Defend Relative.** If one enters a conflict to defend a relative and afterwards abandons his plan to defend such relative and himself withdraws in good faith from such conflict and is thereafter pursued, his right to defend himself from the latter attack is complete, although the relative to whose aid he first entered the conflict has not withdrawn therefrom.

4. **Instructions as a Whole not Erroneous.** Instructions examined, and held fairly to cover the law as applied to the evidence, and not prejudicially erroneous when considered as a whole.

Appeal from District Court, Cherokee County; A. C. Brewster, Judge.

Claude Moore was convicted of assault with intent to kill, and he appeals. Affirmed.

This is an appeal from a judgment of conviction against the plaintiff in error, Claude Moore, hereinafter referred to as defendant, rendered in the district court of Cherokee county on the 18th day of September, 1920, wherein defendant was charged with and convicted of the crime of assault with intent to kill one Henry Cannon, and his punishment fixed as above stated.

This is a companion case to that of John Moore v. State, 25 Okla. Cr. 54, 218 Pac. 1106, this day decided, and it

will only be necessary to make a short statement of the facts in addition to that contained in the opinion rendered in No. A-3939.

On the part of the prosecuting witness, Cannon, the testimony is that John Moore and Claude Moore came into the house of Bob Thomas where a dance was in progress; that John Moore had previously had a difficulty with Henry Cannon, and that both John Moore and Claude Moore had been in the house before this trouble commenced and had left the house and returned with rocks and knives; that John Moore asked Claude Moore, "Shall I hit him?" to which Claude replied, "Beef him," and then John Moore threw a rock and hit the prosecuting witness, Cannon, on the side of the head with it, after which a general fight and scuffle occurred in the room and on the bed in the room, in which conflict, according to the testimony of the prosecuting witness, both John Moore and Claude Moore cut him with knives, acting together, inflicting serious wounds upon the person of the prosecuting witness.

Both defendants deny positively that Claude Moore, this defendant, either cut the prosecuting witness or advised his brother to hit the prosecuting witness with the rock. Claude Moore claims that the first he knew of the trouble was after the fight began, and that he interfered therein to prevent his brother being shot by the prosecuting witness with a pistol which the prosecuting witness then had, and solely for the purpose of taking the pistol from the prosecuting witness, and when he succeeded in getting the pistol from the prosecuting witness the fight ended.

There is very little corroborating evidence on either side. There was quite a crowd present, consisting of both men and women, who were evidently considerably frightened when

the fight started, and who ran from the house at different times during the conflict so that they were unable to give, both because of their inability to see the conflict plainly because of the crowd, and also because of their frightened condition, a clear detail of the transaction.

Suffice it to say, as was said in the John Moore Case, that neither John Moore nor Henry Cannon were free from fault, and that this defendant, Claude Moore, is guilty as a principal offender provided the jury believed the testimony on the part of the state to the exclusion of that of the defendants. The fact that Claude Moore received a much lighter sentence than his brother John Moore is attributable, no doubt, to the fact that ill feeling existed between the prosecuting witness and John Moore prior to the commencement of this difficulty; that such was not the case as to Claude Moore, and further, according to the state's testimony, Claude Moore only cut the prosecuting witness one time, while John Moore cut him about a dozen times.

Bruce L. Keenan, for plaintiff in error.

George F. Short, Atty. Gen., and N. W. Gore, Asst. Atty. Gen., for the State.

MATSON, P. J. (after stating the facts as above). On the foregoing facts, eliminating the stock instructions, the trial court in applying the law to the issues gave the following:

"(3) You are instructed that an 'assault' is any willful and unlawful attempt or offer with force or violence to do a corporal hurt to another. A 'battery' is any willful and unlawful use of force or violence upon the person of another. To use or attempt to offer to use force or violence upon or toward the person of another is not unlawful in the following cases:

"First. When necessarily committed by a public officer in the performance of any legal duty, or by any other person assisting him or acting by his direction.

"Second. When necessarily committed by any person in arresting one who has committed any felony, and delivering him to a public officer competent to receive him in custody.

"Third. When committed either by the party about to be injured or by any other person in his aid or defense in preventing or attempting to prevent an offense against his person, or any trespass or other unlawful interference with real or personal property in his lawful possession; provided the force or violence used is not more than sufficient to prevent such offense.

"(4) You are instructed that an 'attempt to kill' is defined as follows: Any person who intentionally and wrongfully shoots, shoots at, or attempts to shoot at another with any kind of firearm, air gun, or other means whatever, with intent to kill said person, or if he commits any assault and battery upon another by means of any deadly weapon, or by such other means or force as is likely to produce death, or in resisting the execution of any legal process, is punishable by imprisonment in the penitentiary not exceeding 10 years.

"(5) You are instructed that all persons concerned in the commission of a crime, whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals. To 'aid and abet' may consist of words spoken, or acts done for the purpose of assisting in the commission of the crime, or of encouraging its commission; to 'abet' is to countenance, assist, give aid. The word 'abet' includes knowledge of the wrongful purpose of the perpetrator, and counsel and encouragement in the crime.

"(6) You are instructed that consent and acquiescence are mental acts, which, unless communicated to the perpetrator of the offense, in no manner aid or abet him in its per-

petration. To be concerned in the commission of crime, one must either commit the crime himself, or procure it to be done, or aid or assist, abet, advise, or encourage its commission. But a mere mental assent to, or acquiescence in, the commission of a crime by one who did not procure or advise its perpetration who takes no part therein, gives no counsel, and utters no word of encouragement to the perpetrator, however wrong morally, does not in law constitute such person a participant in the crime.

"(7) Now, in this case the defendant, Claude Moore, as his plea and for his defense says that the assaulting, striking, bruising, beating, and wounding of the prosecuting witness was justifiable on the part of his brother, John Moore, and that in doing so his brother, John Moore, was acting in his own necessary self-defense, and that he had nothing to do with the fight between John Moore and the prosecuting witness, except to try to disarm the prosecuting witness, and thereby prevent serious bodily injury, or to prevent the prosecuting witness from killing his brother, John Moore. The law gives to every person the right to fight in his own defense, and that of his family, to protect himself or them from the unlawful attack of an adversary, and where a person is unlawfully attacked he is not required to retreat, but has a right to stand his ground, and use whatever force is necessary to repel the attack in order to prevent great bodily injury to himself or member of his family. The law of self-defense was given to the citizen for his protection, but it cannot be pleaded as a defense by one who himself is the aggressor, or who enters voluntarily into a difficulty armed with a deadly or dangerous weapon, no matter in how much danger he may be placed in the course of the difficulty, nor how imminent his peril may become.

"(8) You are instructed that the word 'aggressor,' as used in these instructions, refers to and means the person who provoked the difficulty; to 'provoke the difficulty,' as used in these instructions, means to willingly and knowingly use some language or do some act after meeting the antagonist reasonably calculated to lead to an affray or bodily conflict.

"(9) If you find from the evidence that John Moore armed himself with a rock and knife, or with a rock, or with a knife, for the purpose and with the intent of provoking the difficulty with the prosecuting witness, and in order that he might have an opportunity or pretext to assault the prosecuting witness and to inflict serious bodily harm or injury upon him, and in pursuance of such design did provoke a difficulty with the prosecuting witness, and did assault, strike, bruise, and beat, with force likely to produce death, and did wound the prosecuting witness with the felonious intent of him, the said John Moore, intentionally, wrongfully, unlawfully, purposely, and feloniously to kill the prosecuting witness, and that the defendant did aid, abet, or assist his brother John Moore, it will be your duty to find the defendant guilty; unless you find from the evidence before the prosecuting witness was so assaulted, beaten, bruised, and wounded the defendant abandoned such intention and in good faith withdrew from the conflict.

"(10) You are instructed that while the law permits a person to defend himself, such is defensive and not offensive, and a person cannot under law arm himself and invite and provoke a difficulty, and as a result thereof a fight ensues, and then invoke the right of self-defense, and if you believe from the evidence in this case beyond a reasonable doubt that the defendant, or his brother, John Moore, or either, armed himself with a rock, and sought the prosecuting witness, either acting alone, or together, for the purpose of provoking or engaging in a difficulty with the prosecuting witness, and in furtherance of any such design between the said John Moore and Claude Moore, did invoke and provoke the difficulty with the prosecuting witness, and thereupon the defendant or his brother, John Moore, did assault the prosecuting witness with the intent to kill him with a rock or rocks or knife or knives, which either the said John Moore or the defendant then and there had and held in his hand intentionally, wrongfully, purposely, unlawfully, and feloniously did assault, strike, bruise, and beat with force likely to produce death and did wound the prosecuting witness with the felonious intent, intentionally, wrongfully, unlaw-

fully, purposely, and feloniously to kill the prosecuting witness, then you should convict the defendant, as under such circumstances the defendant cannot invoke the right of self-defense.

"(11) You are instructed that flight, when unexplained, is a circumstance tending to prove consciousness of guilt, and when taken in connection with all the other evidence in the case, its significance is to be determined by the jury; and you should consider the flight of the defendant in connection with all the other facts and circumstances in evidence in determining the defendant's guilt or innocence."

It is contended that instruction No. 9 is fatally defective, in that it fails to include after the words "aid, abet, or assist his brother, John Moore," the essential words of the statute, "in its commission"; that is to say, the instruction should read "and that the defendant did aid, abet, and assist his brother, John Moore, in the commission of the offense"; that separated from the commission of the offense, aiding, abetting, or assisting John Moore would not be any offense.

This court has repeatedly held that the instructions must be considered as a whole, that no single instruction should be considered to the exclusion of the other instructions given; that if, when considered together, they correctly cover the law of the case and are not misleading, confusing, and contradictory, errors or omissions in separate instructions will not constitute reversible error. Spencer v. State, 5 Okla. Cr. 7, 113 Pac. 224; Wishard v. State, 5 Okla. Cr. 610, 115 Pac. 796; Gransden v. State, 12 Okla. Cr. 417, 158 Pac. 157; Dunbar v. State, 15 Okla. Cr. 513, 178 Pac. 699.

Instruction No. 5 defines an "accomplice," and the jury is told in that instruction that principal offenders must

be "concerned in the commission of the crime." The jury is there also told what the terms "aid" and "abet" mean, and that the "aiding" and "abetting" must be in the "commission of the crime," and also that "abet" includes "knowledge of the wrongful purpose of the perpetrator and counsel and encouragement in the crime."

By instruction No. 6 the jury is further told that—

"Mere mental assent to, or acquiescence in, the commission of a crime by one who did not procure or advise its perpetration, who takes no part therein, gives no counsel, and utters no word of encouragement to the perpetrator, however wrong morally, does not in law constitute such person a participant in the crime."

Instructions Nos. 5 and 6 supplement instruction No. 9 and cure any defect occurring in the later instruction. When considered together, we consider the instructions as complete as necessary upon the subject of criminal responsibility of an accomplice, especially in the absence of a request for more definite charges on that subject. No objection was lodged to either instruction No. 5 or instruction No. 6.

It is also contended that instruction No. 10, which was also excepted to, was prejudicially erroneous for the following reasons:

(1) It is inconsistent with, and in contradiction of, instruction No. 9 construed in connection with instruction No. 5.

(2) It is erroneous within itself.

In this connection it is contended:

"That it is bad within itself because it links the blame of one defendant upon the acts of another. It makes Claude Moore responsible for the acts of John Moore."

Instruction No. 10 applies the law of the case to the right of Claude Moore to defend his brother, John Moore.

The general rule is that the right of one to defend another is coextensive with the right of the other to defend himself. Michie on Homicide, vol. 1, p. 430.

So in this case Claude Moore could not avail himself of the right of self-defense unless both he and his brother, John, were free from fault in bringing on the difficulty.

The instruction fairly states the law as applied to the right of Claude Moore to act in his brother's defense and is as favorable to him as the evidence warranted.

While the states of Missouri and Texas hold to the contrary, that is, to the effect that the culpability of one who kills in defense of a relative is not measured by the right of the relative to defend himself, but upon appearance of conditions when he entered the conflict, unless he knew or might reasonably have known the rights possessed by the other under the circumstances of the conflict, such holding in our opinion wholly ignores the right of the deceased, or, in cases of assault, the injured party or prosecuting witness to defend himself. In effect such decisions hold that although the deceased or injured party may at the time be acting wholly within his rights in defending against an unlawful assault, and if killed or injured by the relative who brought about such assault such relative could not claim the right of self-defense, on the other hand, he may under such circumstances be killed or injured by a relative of the party in fault who voluntarily entered the conflict when the first relative was still at fault without criminal responsibility. Further, while the law would require the relative who provoked the attack to withdraw in good faith from the conflict, no such requirement attaches to the relative who without

knowledge of the other's fault enters voluntarily into a conflict with deceased or prosecuting witness and accomplishes the very result for which the relative first in the wrong sought and brought about the conflict.

To so hold, in our opinion, puts too cheap a valuation upon human life and upon security against unlawful injury. The great weight of authority is to the effect that one who goes to the aid of a relative or third person acts at his own peril, and his right to defend the other is coextensive with the other's right to defend himself at the time.

It must be understood in this connection that it is intended not to be held, and that we do not hold, that the right of self-defense can never arise at any stage of a difficulty when one is defending himself against dangers of any kind which he may have unlawfully provoked. In all cases where one has withdrawn from the affray or difficulty as far as he possibly can and fairly indicates his desire for peace, and is thereafter pursued by the other party who renews the difficulty, his right of self-defense, though once lost, is revived and may be successfully pleaded by him, and thereafter his actions will be justified even to the extent of taking human life if necessary. This is also the law as to the relative who enters such conflict after such withdrawal, either with or without knowledge of such withdrawal. And, further, if the relative last entering the conflict abandons his plan to defend the other and himself withdraws in good faith and is himself thereafter pursued by the prosecuting witness or deceased as the case may be, his right to defend himself from the latter attack is complete, although the relative to whose aid he first entered the conflict has not withdrawn therefrom.

The general rule is adequately stated in the following:

Morris v. State (Ala.) 39 South. 608; Sherrill v. State, 138 Ala. 3, 35 South. 129; Utterbach v. Com., 105 Ky. 723, 49 S. W. 479, 88 Am. St. Rep. 328; Sharp v. State, 19 Ohio, 379; Wood v. State, 128 Ala. 27, 29 South. 557, 86 Am. St. Rep. 71; Crockett v. Com., 100 Ky. 382, 39 S. W. 674; State v. Cox, 153 N. C. 638, 69 S. E. 419; Cooper v. State, 123 Tenn. 37, 138 S. W. 826; State v. Cook, 78 S. C. 253, 59 S. E. 862, 15 L. R. A. (N. S.) 1013, 125 Am. St. Rep. 788, 13 Ann. Cas. 1051; Wharton on Homicide (3d Ed.) § 332; 1 Bishop's Crim. Law, § 877; Hale's Pleas of the Crown, vol. 1, p. 484.

Nor do we believe that there is any inconsistency between instruction No. 9 and instruction No. 10.

Instruction No. 9 applies the law to the evidence on the theory that Claude Moore was a principal in the second degree; not an accessory before the fact, as contended for by counsel for defendant.

The evidence of the state and that of the defense, considered together and as a whole, authorized the court to submit the case to the jury on the theory that this defendant, even though they might believe he was not a principal in the first degree, was at least a principal in the second degree, in that he was present aiding, abetting, and assisting his brother, John Moore, who, under the common law, was a principal in the first degree.

As under section 2574, Comp. Stats. 1921, the distinction between principals in the first and second degrees is abrogated, the instructions construed in their entirety were not prejudicially erroneous.

The contention of defendant's counsel that the trial court submitted the cause on the theory that this defendant

was an accessory before the fact, that the assault was the outgrowth of a preconceived plan on the part of both John Moore and Claude Moore, is untenable.

This cause was not submitted on a conspiracy theory, but upon the two theories which the evidence tended to present, to wit:

First. That both John Moore and Claude Moore were principals in the first degree.

Second. That John Moore was a principal in the first degree, and Claude Moore a principal in the second degree, because present aiding and abetting the first principal.

Adopting this view of the evidence and the law applicable thereto, we find no error in the court's general charge considered as a whole sufficient to authorize reversal of this judgment.

Judgment affirmed.

DOYLE and BESSEY, JJ., concur.