## HARRISON HEAD v. STATE.

No. A-3511.     Opinion Filed Jan. 15, 1924.
(221 Pac. 791.)

(Syllabus.)

1.   **Homicide—Error to Reject Evidence Supporting Plea of Defense of Son.** In a trial for assault and battery with intent to kill, the theory and evidence of defendant being that he acted in defense of his son, and in self-defense, it was reversible error to reject evidence offered by defendant showing or tending to show that defendant coming upon the scene found the complaining witness and two others attacking his son.

2.   **Homicide—Father's Right to Defend Son.** Where, upon trial for assault and battery with intent to kill, the evidence showed that defendant intervened in an affray in defense of his son, and upon withdrawing was followed by the complaining witness, and a fight ensued, held, that defendant had the same right to defend his son that the son had to defend himself.

3.   **Evidence—Res Gestae—Evidence of Affray in Which Father Interfered in Defense of Son.** Where the evidence showed that defendant, arriving upon the scene, found three others attacking his son, held, that evidence of the affray was admissible as res gestae.

4.   **Evidence—Admissibility if Relevant when Taken with Other Evidence—Rejection of Material Evidence Prejudicial Error.** Any legal evidence from which the jury may legitimately adduce guilt or innocence is admissible, if, when taken with other evidence in the case, its relevancy appears, and the rejection in a criminal case of material testimony offered by defendant constitutes prejudicial error.

Appeal from District Court, Hughes County; George C. Crump, Judge.

Harrison Head was convicted of assault and battery, and he appeals. Reversed.

Anglin & Hall, for plaintiff in error.

The Attorney General and W. C. Hall, Asst. Atty. Gen., for the State.

DOYLE, J. Appellant, Harrison Head, was tried upon an information charging that he—

"did intentionally, wrongfully, and feloniously commit an assault and battery upon the person of R. L. Carson, by means of a certain knife, the same being then and there a deadly weapon, with the felonious intent of him, the said Harrison Head, to kill the said R. L. Carson."

The jury returned a verdict finding him guilty of "assault and battery as charged in the information," but failed to agree upon the punishment.

By the judgment of the court he was sentenced to be confined in the county jail for 30 days, and to pay a fine of $100 and the costs.

The facts disclosed by the record are that appellant and his family attended a school entertainment at the Gooch schoolhouse, the evening of the date alleged; he being a member of the school board.

When appellant came out of the school house the Carson brothers were fighting with his son, Claude, and had backed him down over the fender of an automobile. Appellant attempted to separate them and pulled Sam Carson loose from his son. The complaining witness, R. L. Carson, turned and took hold of appellant's arm, and appellant struck him.

R. L. (Bob) Carson testified:

"Mr. Head walked up to me and asked to please not have any trouble. When he said that he hit me and knocked me down with his fist, and when I got up stabbed me in the face and hit me again, and I went down on my all fours."

Eight or nine other witnesses for the state testified that they saw appellant hit R. L. Carson with his fist, but none of them could swear that appellant cut him. Several of these witnesses testified that they saw a man whom they did not know strike Carson, and that this other man struck Carson over appellant's shoulder.

As a witness in his own behalf, Harrison Head testified:

"Bob Carson came walking up to me and took hold of my shoulder; he gave me a good shaking and said, 'Mr. Head what do you mean?' I says: 'Not anything, Bob, I was trying to separate the boys.' I pulled away from him, and he came at me with his fist. I threw my left arm up to knock the lick off, and I hit him with my fist on the jaw; I did not strike him with a knife. I had pulled Sam Carson off of my Son, Claude, just before Bob Carson grabbed me."

Claude Head testified that—

"Sam Carson, Bob Carson, and Nick Sehorn were all fighting me, and some one cut me with a knife; then I pulled my knife and cut Bob Carson on the right side of the face, and I cut Sam Carson."

Joe Hamilton testified:

"I saw Claude Head strike at Bob Carson with a knife."

Jesse Jackson testified:

"I did not see any difficulty between Harrison Head and Bob Carson that night until after Mr. Head went up to separate the Carson boys and his son Claude. They were all fighting, and Mr. Head grabbed hold of Sam Carson and said, 'Here boys, we don't want anything like this.' When he did that Bob Carson turned Claude loose and started over to Mr. Head, and struck at him, then dropped back and kinder 'booed' and growled at him, and Mr. Head hit him with his fist."

The grounds for a new trial and assigned as error are that the evidence is insufficient to justify the verdict of the jury; improper remarks by the court during the trial prejudicial to the rights of the defendant; comments by the court in the presence of the jury upon the weight of the evidence on behalf of the state; and error in the rejection of competent, relevant, and material testimony offered by the defendant.

The record shows in his opening statement, before any evidence had been introduced, counsel for defense was interrupted by the court saying:

"Mr. Hall, I expect I can shorten your statement. The court will hold that these two fights were separate and distinct, and it will be immaterial whether Claude Head was justifiable or not in the infliction of the wounds. We will not go into any justification of that wound, if Claude Head inflicted it. We will just eliminate all of that.

"By Mr. Hall: As to the part of the justification upon the part of the other fight?

"By the Court: Every bit of it, because the only question for the jury to decide, Did Mr. Head strike the lick? If he did was it in self-defense?"

During the cross-examination of the state's witness Stewart, the record is as follows:

"Q. I just want to make the record, your honor, it is not to antagonize the court. As a matter of fact, it was your attitude there toward Emmitt Jones, just when you went out and got in your car, that caused the fight to begin there that night between the Heads and the Carsons, wasn't it?

"By Mr. Skinner: We object as incompetent and immaterial.

"By the Court: Sustained.

"By Mr. Anglin: Give us an exception. May I dictate what I think the testimony will show?

"By the Court: Yes.

"By Mr. Anglin: We expect the answer to be that he had taken a knife away from Emmitt Jones, and that caused Claude Head to intercede, and this got the father of Claude Head into the difficulty.

"By the Court: The objection will be sustained for the reason that the defendant disclaims that he cut R. L. Carson,

and that his defense is that some one else cut him, and the only issue for the jury to try is this: At the time the defendant struck R. L. Carson with his fist, was it necessary for him to do so under the law to repel any threatened attack by Carson upon him, and that the defendant, Head, does not plead self-defense, but denies the charge that he cut R. L. Carson. And the court holds that the issues presented to the jury in the opening statement that what Mr. Head done and what Sam Carson did is immaterial and has no bearing in this case, for the reason that the defendant does not make the claim that he was protecting any one but himself when he made the lick with his fist, and disclaims that he did the cutting at all.

"By Mr. Anglin: Give us an exception.

"By the Court: I hold that, so far as this case is concerned that there was two separate and distinct fights—the fight between Claude Head and the others, and the fight between Mr. Harrison Head and Mr. R. L. Carson, and the question for this jury to decide is: Did Mr. Harrison Head strike R. L. Carson with his fist? If he did strike him with his fist was he justifiable under the instructions of the court. Second, that, if Mr. Head struck R. L. Carson with that knife and cut him, he is guilty, because he says he did not do it, Third, there is no defense in that; and the court holds that, if the jury have no reasonable doubts that Harrison Head cut R. L. Carson with a knife, that it would be their duty to convict him for the reason that he says he did not cut R. L. Carson.

"By Mr. Anglin: Give us an exception to the ruling of the court as well as the statement of the court. I hope we understand each other.

"By the Court: Let me ask you this: Did Harrison Head strike R. L. Carson for what he was doing to him?

"By Mr. Anglin: Our contention is that he went to the rescue of his boy, who was being cut by Sam Carson and Bob Carson and Nick Sehorn; that he pulled Sam Carson off of him and he got loose and went back.

"By the Court: No one after him. What did he strike R. L. Carson for? What is your defense? Why did he say he hit him?

"By Mr. Anglin: To protect himself and to protect his boy—keeping them off.

"By the Court: Now the issue is: Did he hit him? If he did hit him, did he have a right to hit him under the law? Now the further question is, Did he cut him?

"By Mr. Anglin: That is right, but we are trying to go into the fight there with Nick Sehorn and Bob Carson and Sam Carson and this defendant's boy.

"By the Court: For what?

"By Mr. Anglin: To show that he went into it to protect his boy and had pulled some of them off of his boy.

"By the Court: Did he pull R. L. Carson off?

"By Mr. Anglin: He pulled Sam off first.

"By the Court: The court will instruct the jury that if Mr. Head didn't do the cutting to turn him loose. If he did cut him, to convict him.

"By Mr. Anglin: On that phase of the case?

"By the Court: Yes, sir; on the assault and battery phase. The court will instruct the jury that if Mr. Head struck Bob Carson with his fist and at the time he struck him he did so in order to keep from receiving any corporal hurt, at the hands of R. L. Carson, the prosecuting witness, he had a right to hit him, but if he did strike him without the right as defined as being self-defense, why he is guilty.

"By Mr. Anglin: Your honor, the testimony on the part of the defense will show this: That he pulled Sam Carson off.

"By the Court: How could that testimony be admitted?

"By Mr. Anglin: and that Bob ran at him and struck him or tried to strike him. Doesn't that show it grew out of

the same transaction, the right to protect his boy and himself?''

The record further shows that defendant offered to prove by witness Claude Head that Sam Carson cut him and that witness then drew his knife and at the time Bob Carson, Sam Carson, and Nick Sehorn were all making an attack upon witness, and the defendant appeared upon the scene.

''By the Court: I would let him answer who cut him, if Mr. Harrison Head was pleading self-defense. I have held all the way through that the altercation between Claude Head and these other boys was not competent in this case, for the reason that the defendant says he did not strike the blow that inflicted the wound upon the body of Bob Carson.

''By Mr. Hall: Our contention, your honor, is not only self-defense, but defense of this boy. We have been trying to make that clear all the way through this trial.

''By the Court: All I want to know is the truth in this matter. That is all the jury wants to know; we haven't a bit of feeling in it at all.

''By Mr. Anglin: Save our exception to the remarks of the court.

''By the Court: What wrong did I make there?

''By Mr. Anglin: Your honor, we have the right to make our record.

''By the Court: I think you have when made in good faith, some bearing upon the case.

''By Mr. Anglin: We except.''

It is a well-recognized principle of law that the defendant under the evidence offered and rejected by the court would have the same right to act in defense of his son that he would have to act in his own defense. It is elementary law that the defendant had the same right to defend his son that the son had to defend himself.

Section 3574, Comp. Stats. 1921, provides:

"Any necessary force may be used to protect from wrongful injury the person or property of one's self or of a wife, husband, child, parent or other relative, or member of one's family, or of a ward, servant, master or guest."

Section 1762, Comp. Stats. 1921, provides:

"To use or to attempt to offer or to use force or violence upon or toward the person of another is not unlawful in the following cases: * * *

"Third. When committed either by the party about to be injured, or by any other person in his aid or defense, in preventing or attempting to prevent an offense against his person. * * * Provided, The force or violence used is not more than sufficient to prevent such offense."

In Moore v. State, 25 Okla. Cr. 118, 218 Pac. 1102, we said:

"If one enters a conflict to defend a relative and afterwards abandons his plan to defend such relative and himself withdraws in good faith from such conflict and is thereafter pursued, his right to defend himself from the latter attack is complete, although the relative to whose aid he first entered the conflict has not withdrawn therefrom."

In Moore v. State, 25 Okla. Cr. 151, 219 Pac. 175, we said:

"As a general rule a person has a right to use violence in defense of another only when the imperiled person would have been justified in using it in his own defense. Both must have been free from fault in bringing on the difficulty."

It follows that the court erred in its rulings excluding the evidence offered on the part of the defendant. It should be said in passing that the evidence rejected was also admissible as a part of the res gestae.

A defendant in a criminal prosecution is entitled to a trial, conducted in accordance with the rules of law, and the question of his guilt or innocence should be determined upon legal evidence. Where material evidence has been offered on the part of the defendant, and erroneously rejected by the court, we are not at liberty to say that the error is merely technical, or that the substantial rights of the defendant have not been prejudiced. And, where exceptions are reserved, such rulings require a reversal of conviction.

For the reasons indicated the judgment of the trial court is reversed.

MATSON, P. J., and BESSEY, J., concur.