## GEORGE CROWELL v. STATE.

No. A-8640. April 14, 1934.
Rehearing Denied May 25, 1934.
(32 Pac. [2d] 752.)

E. W. Snoddy, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J.   The plaintiff in error, hereinafter referred to as the defendant, was convicted of an assault with intent to commit rape, and his punishment fixed at one year in the penitentiary.   Motion for new trial was filed, considered, overruled, and defendant appeals.

The following is an abstract of the testmony: The defendant was a resident of Alva.   On the 23d day of January, 1933, a party was organized by the prosecuting witness composed of the defendant, Mortimer Welch and Mrs. Mary Catherine Marsh.   A lunch was prepared by Miss Thompson and Mrs. Marsh furnished the car, and the four composing the crowd drove from Alva to Waynoka, where the record shows whisky was purchased and the parties indulged in drinking.   The defendant and the prosecuting witness had known each other for fifteen years.   Miss Thompson at one time lived in the home of the father of the defendant and attended school at Alva.   The defendant became intoxicated.   Shortly after midnight they left Waynoka, the complaining witness and Mrs. Marsh testifying it was their intention to return to Alva.   The defendant was driving the car and, instead of going to Alva, went to the ranch of his father several miles away.

The record shows when they reached the ranch house they got out, a fire was built, and they made coffee, and coffee and sandwiches were served to the entire party; considerable drinking was indulged in by the parties.   It is also shown when they got to the ranch the defendant took the keys out of the car and put them in his pocket.   It finally developed that the defendant had thrown the keys of the car away, or said he did.

"We looked for the keys where we thought George threw them, but did not find them; after a short while Mortimer Welch took Mrs. Marsh by the arm and started to the car, and I started to go with them, and George grabbed me and held me, and I said, 'I did not come with you and you let me loose; I screamed and yelled for Mortimer, and George raised his fist or arm and hit me under the chin and knocked me back on the bed; I screamed again and raised up and George said, 'You raise up again and I will knock you down;' I raised up and he knocked me down again; I thought they would come and help me and I kicked the window out, then George knocked me back on the bed and picked up a chair and said, 'I am going to kill you,' he caught me by the wrist and I got away and tried to jump out of the bedroom window, but the screen held me; he grabbed me by the throat and choked me until I could not make a sound; I tried to get out of the door and he would not let me; he told me he had locked the other door so I could not get out; he then struck me or pushed me down; as I fell I saw there was a gun there; George was standing over me, I had scratched him in the eye; I stuck this gun in his stomach and pulled the trigger, but it was not loaded, and he said, 'Do you want to go to the pen;' some way I managed to get up off the floor and George grabbed me by the throat; I was trying to hit him with the gun and scratching him with my left hand; I finally had to drop the gun, it was so heavy.

"He choked me until I was insensible; I fell forward and saw George stumble and hit a stove and it toppled forward and I think the stove pipe fell. George said, 'You little wild cat, you have gone too long, you need some one to tame you and I am going to be the one to do it;' he said, 'I am going to jump right in the middle of you and stomp you to death, I am going to jump in your face and grind my heel;' I thought if I could only do something to get away, and I said, 'George, what is it you want' and he said, 'Yes, you know what I want,' and he said, 'Get from under that bed,' and I said, 'Let me up off the floor then,' and he said, 'I will cut your throat if you offer to fight me.' I

picked up a handkerchief and started to wipe his face, and he said, 'Don't start anything like that,' and I said, 'I am not.' He started to the kitchen, and I tiptoed out and got in the car with Mort and Mrs. Marsh; I told them George had tried to kill me and to not let him in the car; the door was open and Mrs. Marsh and Mort stepped out. I grabbed Mort and said, 'Don't leave me,' and then he shut the door and said, 'I have you right where I want you, I am going to screw you; I will see just how good you are;' just as he started to unfasten his clothes Mort and Mrs. Marsh came back to the right hand side of the car and I think Mort took hold of George; I finally got out; Mort had hold of George and I grabbed Mrs. Marsh and said, 'Come on, George tried to kill me.' We ran around a wagon and on through the barn yard and started to hide, and I said, 'We can't hide here, if he finds us it will be worse than ever.' After a while, Mrs. Marsh stopped and I said, 'I am going on,' and I left her there; for some time I could not find a place where there was easy walking—it was canyon after canyon—about seven o'clock in the morning I reached Mrs. Jackson's; I did not know whose place it was; I was exhausted and my ankle was sprained and my knee bleeding; Mrs. Jackson took me in the house and laid me on the bed and gave me water to drink; it was about three o'clock in the morning when I got away from the defendant at the ranch house."

Mrs. Marsh corroborated the prosecuting witness as to their being at the ranch house, and that part testified to by the complaining witness that occurred in her presence in and out of the house, and corroborated the witness as to the defendant's face being scratched, and as to the complaining witness leaving the ranch house and, running off. Mrs. Marsh further testified that after the complaining witness left the house, and some time before daylight, Mort Welch left the house saying he was going to hunt Juanita; that—

"George Crowell shut the door and grabbed me by the arm and threw me on the bed; I started crying and scream-

ing and hit him as hard as I could, and he said, 'I fought one wild cat tonight and I will blow your God damned brains out,' and got a gun from over against the wall and laid it on the bed, held my hands and raped me. As soon as I could I got up and ran out doors, and Mort was sitting in the car."

The defendant, in his testimony, admitted leaving Alva with the complaining witness, Mrs. Marsh, and Mort Welch; admitted everything that occurred along the line from the time he left Alva until they reached the ranch; he stated he got in a fight with the complaining witness Juanita Thompson in the house, and slapped her because she was scratching his face and fighting him. He insists the complaining witness was mad because she thought Mort Welch was paying too much attention to Mrs. Marsh. Defendant denies he attempted sexual intercourse with the prosecuting witness and denies the statement of Mrs. Marsh as to his raping her. After the occurrence and the complaining witness got home, it appears from the record that the defendant ran off, left his home, and was arrested at some other town.

The testimony in this case is voluminous, but we have set out all we deem necessary to arrive at the proper conclusion of the law and the facts. All the conflict there is in the testimony is the question as to whether or not the defendant attempted to rape the complaining witness.

The defendant in his first assignment of error states that the trial court erred in overruling his motion for a new trial. In his motion for a new trial the defendant states that the verdict was decided by lot, and that it was not a fair expression of the jury; the court misdirected the jury as to matters of law; the court erred in rejecting testimony offered by the defendant; because the verdict is con-

trary to the law and the evidence; the court erred in giving instructions 2, 3, 4, and 5.

The first proposition argued by the defendant is that the court erred in giving instruction No. 3, which instruction is as follows:

"Any person who is guilty of an assault with intent to commit rape is punishable by imprisonment in the state penitentiary for any period of time not exceeding five (5) years, or in the county jail, not exceeding one year, or by a fine not exceeding five hundred dollars, or by both such fine and imprisonment.

"Rape is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator, if, first: she resists, but her resistance is overcome by force or violence, or, second: if she is prevented from resistance by threats of immediate and great bodily harm, accomplished by apparent power of execution.

"An assault is any willful or unlawful attempt or offer with force or violence to do corporal hurt to another.

"A battery is any willful and unlawful use of force or violence upon the person of another.

Assault, or assault and battery shall be punishable by imprisonment in the county jail not exceeding thirty (30) days, or by a fine of not more than $500 nor less than $100, or both, at the discretion of the jury."

The defendant in his brief discusses at length the above and foregoing instruction and insists that the last paragraph of the instruction is an error sufficient to warrant this court in reversing the case. In the instruction the court tells the jury that assault or assault and battery is punishable by confinement in the county jail not exceeding 30 days, or by a fine of not more than $500 and not less than $100, or both, at the discretion of the court. The statute for assault or assault and battery fixes the

punishment at not exceeding thirty days in jail and a fine of not less than $5 or more than $100, or both, at the discretion of the court.

The defendant was on trial for assault with intent to commit rape, and the jury returned a verdict finding him guilty of the charge and assessing his punishment at one year in the state penitentiary. Assault and battery is an included offense in assault with intent to commit rape, but the jury by its verdict found the defendant was guilty of the offense charged in the information and not of the included offense. The defendant relies on Patterson v. State, 44 Okla. Cr. 298, 280 Pac 862, and Green v. State, 55 Okla. Cr. 12, 24 Pac. (2d) 301, to sustain his contention that the error of the court in defining the punishment for assault or assault and battery is sufficient to entitle him to a reversal.

An examination of the two cases relied upon by the defendant will show the facts in the cases are not in point. In Patterson v. State, supra, the court submitted to the jury a smaller penalty than was provided by the statute, and the jury assessed a smaller penalty than that fixed by the statute. In Green v. State, supra, the court instructed the jury the minimum punishment for selling liquor to a minor was one year in the penitentiary, when the minimum punishment was thirty days in jail and a fine of $50. In the two cases relied upon by the defendant the court held that it was error for the trial court to give the jury permission to impose a minimum punishment less than that provided by statute, or to instruct the jury that the minimum punishment was greater than that fixed by statute. The contention of the defendant would be good if the jury had found the defendant guilty of assault or assault and battery and fixed his fine at more than $100; but in view of the fact the jury found the defendant guilty

of assault with intent to commit rape, the point urged by the defendant is not well taken, as the rights of the defendant were not prejudiced by reason of the instruction as to the penalty for the minor included offense.

The defendant complains that the court erred in refusing to give his requested instruction. In the motion for a new trial the defendant makes no complaint that the court erred in refusing to give the requested instruction as mentioned in the petition in error. The instructions of the court have been considered, and the law contained in the instruction requested by the defendant was fully covered by the charge given by the trial court on the facts in the case. The court did not err in refusing to give the requested instruction. Wheat v. State, 38 Okla. Cr. 119, 259 Pac. 279.

It is further argued by the defendant that the court erred in law in its fifth instruction. When considered in connection with the other instructions of the court, it does not contain any error. Considering the instructions in their entirety, there is nothing in this instruction to mislead the jury. It is clearly shown that it did not mislead the jury, as the jury arrived at a verdict of assault with intent to commit rape instead of assault or assault and battery. This court has repeatedly held that the instructions must be considered as a whole by the jury in arriving at its verdict. Moore v. State, 25 Okla. Cr. 118, 218 Pac. 1102; Cole v. State, 18 Okla. Cr. 430, 195 Pac. 901.

It is further contended by the defendant that the evidence is insufficient to support a conviction. With this contention we cannot agree. This record presents an unusual condition in a civilized country; here we find a single woman, a married woman, and two men getting together and starting out with a lunch and whisky, and driv-

ing from place to place visiting acquaintances, and continuing to drink; when they left Waynoka the women say they wanted to go home. The testimony for the defense shows it was planned by them to go to a ranch owned by the father of the defendant; the defendant was at the wheel, and instead of going home drove to his father's ranch, arriving there about midnight, and as shown by the record all the parties got out of the car, coffee was made, and lunch served, and additional drinks were served. Shortly thereafter, whether by agreement between the two men or not, Mort Welch induced Mrs. Marsh to leave the house and go to the car which they had driven to the ranch; a disturbance came up between the complaining witness and defendant who were in the house: the complaining witness says the doors were locked and that defendant knocked her down and a general scuffle and trouble ensued; that she fought and scratched the defendant, and defendant in addition to other statements made said he was going to tame her.

In some way complaining witness got out of the house and rushed to the car where the other parties were; defendant came out and got in the car, over the objections of the complaining witness, and she appealed to Mort Welch to not let him in the car; shortly thereafter Welch and Mrs. Marsh got out of the car, and complaining witness says the defendant grabbed her and they scuffled, and he said he was going to screw her and about the time he got his clothes undone the other parties came back and she got out of the car, and she and Mrs. Marsh started to run away from the place and got as far as the barn, when Mrs. Marsh stopped and the complaining witness went on through canyons and brush, until about 7 o'clock next morning, when she came to the Jackson home. The record discloses an unusual condition; here at the ranch are

a number of parties, and by reason of insults offered one of the parties leaves the house; neither the defendant nor Mort Welch attempted to find her or to learn what became of her. The next morning after daylight they drive into town, not knowing what had become of the complaining witness. The jury heard the facts. The testimony as to whether or not the defendant attempted to commit rape on the complaining witness is conflicting; the testimony of the complaining witness is that he did attempt to rape her, and the defendant's testimony is that he did not. Every fact and circumstance from the time they arrived at the ranch indicate conclusively there was an agreement between Welch and the defendant that the defendant was going to have sexual intercourse with the complaining witness. This court has repeatedly held that when from the oral testimony and surrounding facts and circumstances the jury could reasonably find the defendant guilty, although the oral testimony may be conflicting, this court will not substitute its judgment for that of the jury on the weight and credibility of the evidence and will not disturb the verdict on the ground of the insufficiency of the evidence.

The evidence is sufficient to sustain the judgment. The defendant was accorded a fair and impartial trial. The court properly instructed the jury as to the law applicable to the facts. There are no errors in the record warranting a reversal.

The judgment of the trial court is affirmed.

EDWARDS, P. J., and CHAPPELL, J., concur.